477 P.2d 497

Larry GILLINGHAM, Plaintiff-Respondent,

v.

Ben F. STADLER, Defendant-Appellant.

No. 10324.

Supreme Court of Idaho.

Nov. 30, 1970.

---

Robert E. Bakes, of Bakes & Ward, Boise, for defendant-appellant.

Gigray, Downen & Morgan, Caldwell, for plaintiff-respondent.

SPEAR, Justice.

This action arises out of an alleged breach by Ben F. Stadler, appellant herein, of a written contract to sell his entire 1966 hay crop to Larry Gillingham, respondent. Although he admitted execution of the contract, appellant asserted several affirmative defenses and also filed a counterclaim against respondent based on other grounds. From a judgment upholding the written contract, granting damages to the respondent for appellant's breach thereof, and allowing appellant a set-off for the amount of his counterclaim, this appeal was taken.

In September 1965, the parties in this action entered into a written agreement which provided:

"I, Larry Gillingham buyer, and Ben Stadler, seller, do hereby agree to:

"The purchase by Larry Gillingham of all of Ben Stadler's 1966 hay crops, providing that the hay is of good quality. Gillingham further retaining the option to refuse any hay not of good quality. Both parties further agree to the amount of $20.00 per ton for the hay. Hay is to be stacked at the Stadler Ranch at Dry Creek. Stadler also agrees to assist with the loading with his Farmhand loader, if Gillingham decides to load from the field. Down payment on Stadler's hay crops to be one Case Crawler 1010 Terri-Trac Crawler Tractor. Tractor valued and received at the price of $3750.00 as the down payment on seller's 1966 hay crops from buyer Gillingham. Buyer further agrees to pay for all hay removed from Stadler's Ranch upon request from Seller Stadler.

"Dated October 11, 1965.

        Buyer
        Signed Larry Gillingham
        Seller  .
        Signed Ben F. Stadler"

Two or three weeks prior to the signing of the contract, respondent delivered the tractor to the appellant at his farm for the purpose of allowing appellant to inspect and try out the tractor. Although by his own admissions appellant was not a stranger to written contracts, in the two or three weeks he had possession of the tractor before signing the written contract, he did not try out the tractor. In October, appellant's neighbor used the tractor with appellant's permission, and then informed appellant of mechanical troubles he had experienced in using the machine. Appellant, however, did not try out the tractor nor make any complaint to respondent.

In June of 1966, respondent received 100 tons of appellant's first cutting of hay. In the next few weeks the price of hay rose sharply, to over $20.00 per ton. Appellant then tried out the tractor and allegedly found that it was defective. Appellant then demanded that respondent take the tractor back, and that he pay cash at the rate of $20.00 per ton for the hay that he had purchased. He also informed respondent that the latter could purchase no more of his hay crop unless he first took back the tractor. Respondent refused this demand and brought suit on the written contract. Appellant answered, admitting the execution of the agreement, but asserting as affirmative defenses that there was a failure of consideration in that the tractor did not perform as warranted, that the agreement was unenforceable because it was entered into as the result of mutual mistake or as the result of fraudulent misrepresentations by respondent, and that the acceptance of the tractor as part payment was conditioned upon a try-out of the tractor. Appellant also filed a counterclaim against respondent for 20 tons of hay allegedly sold and delivered to respondent in 1965, and for five used truck tires and 100 tons of hay delivered to respondent in 1966.

Based upon the conflicting evidence presented, the court found that respondent had made no material misrepresentations, that the contract was not ambiguous or uncer-

tain, and that appellant had not rejected the tractor within a reasonable time. The court entered judgment in favor of the respondent for damages, but allowed the appellant a set-off in the amount sought in his counterclaim.

In computing the damages, the court found that appellant had 404 tons of good quality hay in 1966; that the market price of the 100 tons delivered to respondent was $20.00 per ton as agreed in the contract; that the market price of the remaining 304 tons was $25.00 per ton (after refusing to sell to respondent the 304 tons, appellant sold the same to his neighbors at $25.00 per ton); and that the respondent was indebted to appellant for the purchase price of truck tires in the amount of $37.50 and for 20 tons of 1965 hay at $21.00 per ton. The court then awarded respondent damages of $1,520.00 for the loss of the bargain on the 1966 hay crop ($25.00 market price minus $20.00 contract price equals $5.00 profit on the 304 tons or $1,520.00), and $3,750.00 for the purchase price of the tractor. Against that sum, the court allowed appellant a set-off of $2,457.50 to cover the truck tires, 20 tons of 1965 hay, and 100 tons of 1966 hay. From that judgment, appellant brought this appeal.

■ ■ Appellant charges error on the part of the lower court in failing to find as a matter of law that the respondent had made material misrepresentations regarding the condition of the tractor and its value. However, fraud is never presumed, but must be established by clear and convincing evidence, especially where the integrity of a written instrument is assailed. Thomson v. Marks, 86 Idaho 166, 384 P.2d 69 (1963); C. I. T. Corporation v. Hess, 88 Idaho 1, 395 P.2d 471 (1964). For the appellant to have carried his burden of proof in establishing fraud, he must have proven (1) a representation; (2) its falsity; (3) its materialty; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559 (1962); Andrus v. Irick, 87 Idaho 471, 394 P.2d 304 (1964); Nab v. Hills, 92 Idaho 877, 452 P.2d 981 (1969).

Appellant alleges the following misrepresentations were made by the respondent: (1) that the tractor was a 1962 model, when in fact it was a 1958 model; (2) that the tractor had been used only 1400 hours, when in fact it had been used in excess of 1400 hours; (3) that the tractor would cost in excess of $5,000.00 from a dealer, when in fact it was worth only $1,750.00; and (4) that the tractor was "like new," when it in fact had serious defects. Appellant did not prove the nine elements of fraud as to any of the alleged misrepresentations.

■ First of all, regarding the model year of the tractor, the appellant offered no proof that the respondent knew the tractor to be other than a 1962 model. In his findings of fact, the trial judge found that the appellant proved neither his reliance on the alleged misrepresentation of model year nor its materiality to the transaction by clear and convincing evidence. The trial judge's findings of fact on these points, well supported by the record, will not be disturbed by this court. Thus, the appellant's allegation of fraud based on the alleged misrepresentation of the model year fails in three particulars: the respondent was not shown to have known of the falsity of the statement, and the appellant demonstrated neither his reliance on the representation nor its materiality to the transaction.

■ Secondly, appellant offered no proof that the tractor had more than 1400 hours on it, but merely testified that the hour meter which indicated 1400 hours was broken. Even if the testimony that the meter was broken was accepted as true, such fact would not constitute proof that the tractor had been used for more hours than indicated on the meter.

██ Thirdly, although contending that the respondent misrepresented the value of the tractor, appellant offered no proof as to the value of the machine. Instead, he relies entirely on respondent's admission that he paid only $1,750.00 for the machine. In any single individual transaction there are many variables which are dependent upon the peculiar aspects of the transfer and which affect the price agreed upon by the parties. Market value, therefore, is generally established by numerous sales of the same or comparable property and, although the price paid for property may be admissible to prove its market value, that fact alone is not conclusive. See C. C. Anderson Stores Co. v. State Tax Commission, 91 Idaho 413, 422 P.2d 337 (1967). In this instance, respondent was a dealer in farm machinery and purchased the tractor from another dealer at wholesale price. It was obvious that he purchased the machine for resale and that he must sell it at a higher price to compensate for his time, his overhead costs including transportation from Walla Walla, Washington to Boise, Idaho, and a certain percentage of profit. In conjunction with these facts, one must also consider the testimony given by appellant's neighbor who had borrowed the tractor. He testified that a tractor of that size would rent for $250.00 to $300.00 per month, which would allow the appellant to recover nearly all the purchase price of $3,750.00 by renting the tractor for one year. Such evidence, coupled with the fact that appellant had agreed in writing that the tractor was worth $3,-750.00, clearly justified the lower court's finding that no material misrepresentation was made as to the value of the tractor.

██ Regarding the final misrepresentation charged by the appellant, "that the respondent stated that the tractor was 'like new,' when in fact it had serious defects," the court found that it was not proved that there were serious defects in the mechanics of the tractor, and that no expert mechanic was called to inspect the tractor to prove that there were serious defects which could not be remedied at little expense. These findings were clearly supported by the record and thus fall within the well established rule that where findings made by the trial court are supported by substantial, competent, though conflicting, evidence, they will not be disturbed upon appeal. Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966) ; McKenney v. Anselmo, 91 Idaho 118, 416 P.2d 509 (1966); Fairchild v. Mathews, 91 Idaho 1, 415 P.2d 43 (1966).

Appellant next contends that the lower court erred in holding that the written contract was not ambiguous or uncertain. He asserts that the words of the contract embody a future action or agreement, and indicate a trial period before the purchase of the tractor. Continuing, he argues that since the contract was ambiguous, the court should have considered the parol evidence submitted and made a finding of fact thereon, holding that the agreement contemplated a delay until June, 1966, for the try-out of the tractor.

The court found that appellant's acceptance of the tractor as part of the purchase price of the hay was conditioned upon a try-out of the tractor, and that the tractor was delivered to appellant's ranch for this purpose two or three weeks prior to the signing of the written contract. The court further found that the written contract was neither ambiguous nor uncertain, that no indication of a try-out period was contained in the language of the contract, and therefore, to find that the acceptance of the tractor was conditional on an additional try-out would be to vary the terms of the contract. Contrary to the allegations of the appellant, the court did consider the parol evidence which was offered as indicated by its next statement that "even if such [additional try-out] does not vary the written contract and the acceptance was conditional after signing the contract, defendant's duty to accept or reject must have been exercised within a reasonable time."

██ The evidence fully supports the court's findings. The contract was not ambiguous and there was no intimation of a future agreement or of any try-out period

manifested by the language. Even so, the appellant made no attempt to reject the tractor or rescind the contract until June of 1966, eight months after the signing of the contract, and significantly, after the price of hay had gone well over the contract price of $20.00 per ton. Such a long delay was patently unreasonable for the purpose of rejecting the tractor.

Finally, appellant assigns error on the part of the trial court in not finding that respondent had a duty to mitigate damages by purchasing appellant's hay crop for cash once appellant had repudiated the contract insofar as it applied to the tractor. This assignment must be dismissed for two reasons. First, appellant did not raise the issue before the lower court and thus, the lower court had no opportunity to rule on the issue. Secondly, appellant suffered no injury from the fact that respondent did not purchase the remainder of his 1966 hay crop. Appellant sold the hay, which should have gone to the respondent under the contract for $20.00 per ton, to his neighbors for $25.00 per ton. Since the court awarded damages to respondent for loss of bargain on the hay at $5.00 per ton, the actual profit made by appellant, the appellant has been fully compensated for any injury thus sustained.

The judgment of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.